SCOTT A. COLLINS, APPELLEE, V. GENERAL CASUALTY
AND PAT CLINCH, DOING BUSINESS AS
PAT CLINCH CONSTRUCTION, APPELLANTS.
606 N.W. 2d 93

Filed February 18, 2000.   No. S-99-395.

John R. Hoffert, of Knudsen, Berkheimer, Richardson & Endacott, for appellants.

James J. Paloucek, of Norman, Paloucek & Herman Law Offices, for appellee.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, MCCORMACK, and MILLER-LERMAN, JJ.

WRIGHT, J.

## NATURE OF CASE

Scott A. Collins sought workers' compensation benefits for an injury which occurred in 1997 during his employment with

Pat Clinch Construction (Clinch). Clinch and General Casualty (collectively referred to as "the defendants"), Clinch's workers' compensation insurance carrier, alleged that Collins' injury resulted from his willful negligence.

The trial judge found that Collins had sustained a compensable injury and awarded benefits, including vocational rehabilitation. A review panel of the Nebraska Workers' Compensation Court affirmed the award in all respects except the review panel concluded that the trial judge had erred in estimating Collins' loss of earning capacity to be 5 percent after successful completion of vocational rehabilitation. The cause was remanded to the trial judge for determination of Collins' present loss of earning capacity, and the defendants timely appealed.

## SCOPE OF REVIEW

■ An appellate court may modify, reverse, or set aside a Workers' Compensation Court decision only when (1) the compensation court acted without or in excess of its powers; (2) the judgment, order, or award was procured by fraud; (3) there is not sufficient competent evidence in the record to warrant the making of the order, judgment, or award; or (4) the findings of fact by the compensation court do not support the order or award. *Frank v. A & L Insulation*, 256 Neb. 898, 594 N.W.2d 586 (1999).

■ Upon appellate review, the findings of fact made by the trial judge of the compensation court have the effect of a jury verdict and will not be disturbed unless clearly wrong. *Id.*

## FACTS

In 1991, Collins sustained a back injury involving the disk at L5-S1 while working for the American Door Company. He underwent medical treatment until the late summer or fall of 1992. At that time, Collins was specifically admonished to abide by work restrictions defined by a functional capacity assessment conducted in 1992 and not to return to heavy physical labor. The recommended lifting capacity was 14 pounds occasionally, 10 pounds frequently, and 8 pounds constantly. The rehabilitation counselor who evaluated Collins recommended that he pursue a diploma through the GED program in order to increase his mar-

ketability. Collins did not pursue such diploma, settled his compensation claim without taking part in vocational rehabilitation.

Subsequently, Collins worked in the meat department of a grocery store as part of the cleanup crew. This work routinely involved lifting items that weighed in excess of 50 pounds. Collins was then employed by an automobile parts store as a deliveryman, which required him to frequently lift and carry items in excess of 50 pounds. For 3½ years prior to the 1997 injury, Collins worked as a laborer in the construction industry. His duties included concrete work, carpentry, and lifting materials in excess of 50 pounds. While employed in these occupations, Collins incurred occasional pain in his lower back which was resolved without medical intervention. Collins did not seek medical attention for back problems between November 1992 and June 3, 1997.

In the spring of 1997, Collins began working for Clinch. As part of his duties, he was required to use a shovel to disperse concrete and to use a board to smooth the concrete. While working on June 3, 1997, Collins noticed a burning sensation along his left leg and into his foot. He attempted to continue working, but the pain increased to the extent that his leg and foot began to feel numb. Collins left work and sought treatment at a local hospital.

A CT scan revealed a posterior herniation of the L5-S1 disk. Dr. Patrick McGrath, an orthopedic surgeon, prescribed bed rest, which failed to improve the symptoms, and surgery was performed in October 1997. Following surgery, McGrath provided a written report in which he opined that Collins had sustained an injury to his back in June 1997 while scooping concrete. McGrath further opined that there was no question that the work injury described by Collins which took place in 1997 was responsible for his present condition.

On April 16, 1998, McGrath assessed a 10-percent whole-body impairment rating. Collins then underwent a functional capacity assessment on May 12. Karen Stricklett, the vocational consultant, reported that Collins' loss of earning capacity was approximately 40 percent. She stated:

> [I]f the Court finds that Mr. Collins had a pre-existing loss of earning capacity in the 30% to 35% range, then the

majority of the current loss of earning capacity estimate would be pre-existing. If, however, the Court finds that Mr. Collins had sustained a prior injury in October of 1991, but was eventually able to resume his pre-injury activities without restriction, then it would appear that the current loss of earning capacity estimate would be solely attributable to his 06/03/97 incident.

Stricklett noted that if the court found that Collins was eligible for vocational rehabilitation services, such services should consist of Collins' acquisition of a diploma through GED followed by a short-term training program or job placement plan.

The trial judge found that Collins had sustained a compensable injury and ordered certain payments and vocational rehabilitation. On appeal, the review panel affirmed the trial judge's award in all respects except for the trial judge's determination that Collins would sustain a 5-percent loss of earning capacity were he to successfully complete vocational rehabilitation. The review panel remanded the cause to the trial judge for determination of the present loss of earning capacity.

## ASSIGNMENTS OF ERROR

The defendants assign as error that the Workers' Compensation Court erred (1) in failing to find that Collins' claim was barred by his own intervening actions and/or willful negligence, (2) in awarding vocational rehabilitation benefits in that Collins' inability to continue work did not result from his accident while employed by Clinch, and (3) in requiring that Collins' loss of earning capacity be determined without considering the benefits of vocational rehabilitation.

## ANALYSIS

We first consider whether Collins' injury was the result of willful negligence. Neb. Rev. Stat. § 48-101 (Reissue 1998) precludes recovery by an employee if the injury is a result of the employee's willful negligence. "Willful negligence consists of (a) a deliberate act, (b) such conduct as evidences reckless indifference to safety, or (c) intoxication . . . ." Neb. Rev. Stat. § 48-151(7) (Supp. 1999).

In order to avoid liability on the basis that the employee was willfully negligent, an employer must prove a deliberate act knowingly done or at least such conduct as evidences a reckless indifference to the employee's own safety. *Krajeski v. Beem*, 157 Neb. 586, 60 N.W.2d 651 (1953). Mere negligence is not sufficient. The conduct of the employee must manifest a reckless disregard for the consequences coupled with a consciousness that injury will naturally or probably result. *Id.* Reckless indifference to safety means more than want of ordinary care. It implies a rash and a careless spirit, not necessarily amounting to wantonness, but approximating it in degree—a willingness to take a chance. It is the employer's burden to prove willful negligence on the part of the employee. *Id.*

The defendants argue that Collins was willfully negligent because he knowingly worked in jobs that exceeded his physical restrictions even though he understood and appreciated that he could be further injured. They rely on *Fenner v. Trimac Transp., Inc.*, 554 N.W.2d 485 (S.D. 1996), in which the South Dakota Supreme Court denied an employee benefits because the employee had intentionally and deliberately disregarded his physical limitations and physician's orders. The defendants argue that the same reasoning should apply to Collins because he engaged in heavy physical labor against medical advice after he sustained a herniated disk injury in 1991 and that, therefore, Collins was willfully negligent because he disregarded his physician's orders and engaged in employment that was medically prohibited.

The issue before the trial judge was whether Collins' decision to work outside his physical limitations for approximately 5½ years prior to the 1997 injury constituted willful negligence. The trial judge found that it did not, and we agree. Upon appellate review, the findings of fact made by the trial judge of the compensation court have the effect of a jury verdict and will not be disturbed unless clearly wrong. *Frank v. A & L Insulation*, 256 Neb. 898, 594 N.W.2d 586 (1999). After Collins was released to work in November 1992, he engaged in a variety of occupations involving heavy manual labor which required him to lift in excess of 50 pounds on a frequent basis. He performed this work

with no significant adverse effects until he sustained his injury on June 3, 1997. Thus, we conclude that the trial judge's finding that Collins was not willfully negligent and that his injury was compensable was not clearly wrong.

■ We next consider the defendants' claim that Collins was not entitled to vocational rehabilitation. Vocational rehabilitation benefits are properly awarded when an injured employee is unable to return to the work for which he or she has previous training or experience. Neb. Rev. Stat. § 48-162.01 (Reissue 1998). The trial judge awarded vocational rehabilitation benefits because he found that Collins' injury was compensable and that he could not return to his occupation in construction.

The defendants argue that since Collins waived his opportunity to receive vocational rehabilitation following his injury in 1991, they should not now be required to pay for vocational rehabilitation. The defendants cite to no legal authority for this position, and we find that such argument has no merit. The trial judge correctly determined that Collins had sustained a compensable injury in the course and scope of his employment and could not return to his occupation in construction. Therefore, the trial judge's award of vocational rehabilitation benefits was not clearly wrong.

The defendants argue that the review panel erred in assessing Collins' loss of earning capacity without considering the benefits of vocational rehabilitation. They claim that the review panel has misinterpreted our opinion in *Gibson v. Kurt Mfg.*, 255 Neb. 255, 583 N.W.2d 767 (1998). We find no merit in this argument.

In *Gibson*, the trial judge awarded vocational rehabilitation benefits but found that it was not appropriate to determine Gibson's loss of earning power until after Gibson had completed vocational rehabilitation. The trial judge stated that if after retraining, the parties could not agree as to Gibson's loss of earning power, either party could apply to the court for further hearing. The employer appealed the award of vocational rehabilitation, and Gibson cross-appealed the trial judge's failure to make a determination as to his loss of earning power prior to vocational rehabilitation.

The review panel found that since, at the time of trial, Gibson had reached maximum medical improvement and had received an impairment rating with restrictions, the trial judge was clearly wrong in not assessing Gibson's loss of earning power. The review panel, inter alia, remanded the cause for a determination of permanent loss of earning power. We affirmed.

In affirming the review panel's decision, we noted that because Gibson's temporary total disability ceased December 27, 1993, and he had reached maximum medical improvement, Gibson could not receive temporary total disability benefits. The employer had appealed the award for vocational rehabilitation, and since the trial judge made no determination of Gibson's loss of earning power, Gibson could not receive any benefits until the issue of vocational rehabilitation had been resolved. Without a determination of loss of earning power, there was no basis for payment of benefits to Gibson during the appeal of the vocational rehabilitation issue. Despite the fact that the trial judge found that Gibson had a substantial loss of earning power, the trial judge had effectively denied Gibson compensation for that loss of earning power until resolution of all the appeals. We held that once Gibson reached maximum medical improvement, unless there was a valid reason for not determining loss of earning power, the trial judge was obligated to make such a determination.

In the case at bar, the review panel correctly determined that since Collins had reached maximum medical improvement, the trial judge was obligated to determine his loss of earning power, and that the trial judge erred in speculating what would be the result of the vocational rehabilitation when determining loss of earning capacity. Therefore, we affirm the judgment of the review panel.

## CONCLUSION

The judgment of the review panel is affirmed. Collins is awarded the sum of $2,800 to apply toward the services of his attorney in this court.

AFFIRMED.

STEPHAN, J., not participating.